Electronically FILED by
Superior Court of California,
County of Los Angeles
2/04/2025 9:51 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

Nicholas Dagher, Esq. (SBN 275776)
DAGHER LAW
147 Waverly Drive
Pasadena, California 91105
Telephone: (626) 415-4422
Facsimile: (626) 470-9710
E-Mail: dagher@nd-lawyers.com;
sam@nd-lawyers.com

Robert Simon, Esq.  (SBN 238095)
Brad M. Simon, Esq. (SBN 244369)
TeamIE@JusticeTeam.com
**THE SIMON LAW GROUP, LLP**
34 Hermosa Avenue
Hermosa Beach, CA 90254
T: (626) 415-4409

Attorneys for Plaintiff
Jane AB Doe, an individual

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| Jane AB Doe, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX; and DOES 1 through 200, inclusive <br><br> Defendants. | Case No.:  25STCV03007 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1.  18 U.S.C. §1595 <br> 2. <br><br><br> **DEMAND FOR JURY TRIAL** |

1
2
3

## INTRODUCTION

4      1.      Sex trafficking has been a major issue all over and throughout the United States in the
5      past few decades and has only gotten worse in recent years.
6      2.      For years, sex trafficking ventures have openly and without care, operated online, as
7      well as, in and out of hotels all throughout the country. How is this possible? It is possible
8      because the hotels are aware and participating in these ventures either indirectly or directly.
9      3.      Despite major hotel brands making public claims that they are combatting human
10     trafficking, the frequency and intensity of sex trafficking has grown rampant. Public
11     appearances, statements and sponsorships to "combat" sex trafficking does not excuse the
12     corporations and individuals that have benefited from sex trafficking.
13     4.      Major hotels may have claims that they are fighting sex trafficking, however they are not
14     actually upholding their actions where and when it counts. Adding a blurb on their website is
15     not enough, especially when there are still individuals being forced against their will to perform
16     despicable acts, all underneath the roof of their own establishment, often times while staff
17     members are aware and making it easier for the traffickers to operate and continue their criminal
18     activity.
19     5.      What these major hotel corporations are not posting on their websites or in public
20     statements is how much they are financially benefitting from the continuous and ever-growing
21     human trafficking. They knowingly and willingly harbor criminals that plan, operate and run sex
22     trafficking operations throughout their hotel chains.  Because it is *lucrative* for them. They make
23     much more money supporting and helping the traffickers as opposed to protecting and
24     defending the innocent victims. That would leave them with empty rooms and therefore empty
25     pockets.
26     6.      As the trafficking industry grows, so does Defendants and their profits through the
27     expansion of their properties, number and consistency of rooms rented, sale of survivors within
28     or on their provided internet services and more.

7.      Plaintiff, JANE AB DOEis a survivor of sex trafficking. She brings this action for damages pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Defendants for perpetrator liability and for benefiting from direct and indirect participation in the ventures that violated 18 U.S.C. §1595 *i.e.*

8.      18 U.S.C. § 1595 creates civil liability for two categories of defendants: (1) those who have themselves committed a criminal offense under § 1591 of the TVPRA ("perpetrator liability"), and (2) those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew or should have known was committing an offense under § 1591 of the TVPRA ("beneficiary liability").

9.      Civil perpetrator liability extends to a defendant who knowingly recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person with knowledge that means of force, threats of force, fraud, or coercion, or any combination of such, will be used to cause the person to engage in a commercial sex act. 18 U.S.C. § 1591.

10.      Beneficiary liability under 1595 extends to a defendant who (1) knowingly benefitted (2) "from participation in a venture" (3) that it "knew or should have known has engaged in" trafficking of the Plaintiff. 18 U.S.C. § 1595(a).

11.      Most sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

12.      All of the named Defendants knew that their properties were regularly used to traffic women.

13.      Rather than taking timely and effective measures to stop profiting from this epidemic, Defendants chose to ignore the presence of sex trafficking on their properties, and instead profited millions of dollars from renting rooms, and acquired valuable customer data by providing free Wi-Fi services to customers, including Plaintiff's trafficker.

14.      With the knowledge that their hotels were used for sex trafficking, and after the decision to refrain from taking measures to stop sex trafficking at their hotels, each hotel named in this complaint effectively operated as a trafficking safe house.

**COMPLAINT AND DEMAND FOR JURY TRIAL**      Exhibit A – Page 6

15.     JANE AB DOEtrafficker felt safe to operate a sex trafficking at and through each hotel safe house named in this Complaint. He paid in cash if he chose to, requested rooms away from other guests, paid for extended stays on a day-to-day basis, he facilitated a flow of male visitors in and out of the hotel room where Plaintiff was located even though those visitors were not guests at the hotel, kept a "Do Not Disturb" sign on the door, were instructed to use specific and secluded entrance/exits where other guests would not see, as well as he would threaten and at times, physically harm JANE AB DOEif she didn't do what he told her to. Even with visible signs of physical abuse to JANE AB DOEno one at the named Defendants looked into it any further than how much money they could profit off of what was happening. A.B trafficker did all of this with impunity because the Defendants were willing to assist him and refused to take any measures to stop him or to protect A.B.

16.     As a result, every single time JANE AB DOEstayed in one of Defendants' hotel rooms, she was subjected to the horrors of being repeatedly raped, multiple times a day, by dozens of different strange men who were only at the hotels to commit sexual offenses against her.

17.     The Defendants make millions from participating in ventures they know or should have known involve violations of 18 U.S.C. § 1591(a) by renting rooms where sex trafficking victims are harbored night after night. Defendants and traffickers have a mutually beneficial relationship fueled and funded by the sexual exploitation of victims. They are partners in crime.

18.     In this case, Defendants directly profited each time a room was rented for the purpose of harboring JANE AB DOEfor sex trafficking.

 19.     Each franchisee defendant knew, or was aware of, an established modus operandi that would cause JANE AB DOEto engage in forced sex work.

20.     Each Defendant, in violation of 18 U.S.C. § 1595, knowingly benefitted from participation in a venture that it knew, or at the very least should have known, to be engaging in sex trafficking of JANE AB DOEin violation of 18 U.S.C. § 1591(a).

21.     JANE AB DOEwas trafficked for commercial sex and suffered severe physical and emotional abuse under duress at the Motel 6 franchises. The trafficking at each of these hotels was open and obvious to anyone working or staying there.

22.     As a direct and proximate result of Defendants providing a safe house to her trafficker and Defendants' consistent refusal to identify and prevent commercial sex trafficking, JANE AB DOEwas trafficked, sexually exploited, and repeatedly victimized at the Motel 6 that operated under the brand flag of G6 Hospitality, LLC.

23.     Plaintiff brings this action pursuant to TVPRA, 18 U.S.C. § 1595 against the Defendants who enabled, harbored, held, facilitated, turned a blind eye to, and financially benefited from a sex trafficking venture in which JANE AB DOEwas trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. § 1591(a).

## **PARTIES**

24.     Jane AB Doe is a natural person who is currently a resident and a citizen of Dallas, TX. JANE AB DOEis a survivor of sex trafficking. From approximately spring 2012 to fall of 2014 she was harbored and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies JANE AB DOEby her initials, only. Plaintiff will move the court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about Plaintiff's true identity in order to protect Plaintiff and Plaintiff's identity.

b. Generally, pleadings must state the name of all parties.[1] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff.[2] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c. In order to maintain her privacy and safety, Plaintiff should not be compelled to disclose her identity. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness.[3] Plaintiff only recently escaped her traffickers and would be in danger of being forced back into trafficker should her traffickers learn information

---

[1] Def. R. Civ. P. 10(a)
[2] See WA Cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).
[3] See WASHINGTON cases *Doe v. Frank,* 951 F.2d 320 , 323 (11th Cir. 1992) (internal citation and quotations omitted).

about her through publicly filed documents in this action. Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identities in a manner that will compromise her personal life, future safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sexual abuses and sexual assaults.

25.     Defendant G6 Hospitality, LLC, is a Delaware corporation with its principal place of business in Carrollton, Texas and is registered to do business in California.

26.     Defendant G6 Hospitality, IP, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

27.     Defendant G6 Hospitality Property, LLC, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

28.     Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

29.     Defendants, G6 Hospitality, L.L.C., G6 Hospitality IP, L.L.C., G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C. will collectively be referred to as "G6".

30.     Defendant Motel 6 Operating, L.P., also known and doing business as Motel 6, Inc., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

31.     Defendants Motel 6 Operating, L.P. and Motel 6, Inc., will collectively be referred to as "Motel 6".

32.     Defendants G6 Hospitality, L.L.C., G6 Hospitality IP, L.L.C., G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C., Motel 6 Operating, L.P., and Motel 6, Inc., will collectively be referred to as Hotel Defendants.

33.     G6 is a hospitality company that, at the time of the incidents alleged herein, directly and through its agents, affiliates, and franchisee Defendant Motel 6 Los Angeles, CA, located at Downtown, 906 S Alvarado St, Los Angeles, CA 90006 - Motel 6 Gardena, CA, located

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**     Exhibit A – Page 9

at,14605 Crenshaw Blvd, Gardena, CA 90249 - Motel 6 Austin, TX, located at, 8010 N Interstate Hwy 35, Austin, TX 78753 - Motel 6 Dallas, TX, located at, Northwest, 2380 W Northwest Hwy, Dallas, TX 75220 offered public lodging services under G6's Motel 6 brand:

i. G6 conducts its business under its legal name and offers franchises in the United States under the brand marks Studio 6 and Motel 6.

ii. As a hotel operator brand, G6 controls the training, procedures, and policies for its brand hotels, including Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, where JANE AB DOEwas trafficked.

iii. G6 requires franchisees, including Motel 6, Inc. to strictly conform with its brand standards, to comply with all local, state, and federal laws, and considers guest safety and respect a component of its social impact.[4]

iv. G6 requires franchisees, including Motel 6, Inc., to comply with anti-trafficking policies and procedures. These policies and procedures were generated solely by G6, distributed to all franchisee hotels by G6, and required franchisee employees to report potential criminal activity and indices of human trafficking to G6's upper-level management. Employees of the Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, witnessed obvious signs of Plaintiff's trafficking, and yet their employees (along with G6) continued renting rooms to Plaintiff's trafficker.

v. Through its franchise agreement with Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, participated in a venture because they took part in a common undertaking involving risk and potential profit.

vi. Through its franchise agreement with Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, G6 knowingly benefited or received something of value (here, a percentage of gross room revenue for the money generated through the operation of its franchised hotels, including the rates charged for the rooms in which Plaintiff was trafficked), from its facilitation of or participation in a venture (here, venturing into the continuous business relationship in the hotel sphere

---

[4] https://g6hospitality.com/about-us/our-impact-2/.

through its franchise agreement in a context where G6 was the primary facilitator or participant in renting rooms; because G6 controlled booking and payment processing for the rental of rooms at its franchised hotels; because G6 fixed the price of room rentals; and because the franchisee directly interfaced with Plaintiff's trafficker and rented rooms to him in compliance with G6's procedures)[5] which it knew or should have known to engage in sex trafficking through the room rentals in which JANE AB DOEwas trafficked.

vii. As part of its franchise agreement with Defendant Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, G6 provided, *inter alia*, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; required Defendant Motel 6, Inc. and other franchisees to attend G6's annual conference; offered additional training to Defendant Motel 6, Inc. as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Motel 6, Inc., and required franchisees, including Defendant Motel 6, Inc. to comply with the standards and policies in G6's operating manual.

---

[5] *See* J.M. v. Choice Hotels Intl., Inc., 2023 WL 3456619 (E.D.C.A. May 15, 2023) (finding venture prong satisfied where plaintiff alleged franchisor defendant required franchisee hotels to report sex trafficking to upper-level management and where hotel employees witnessed open and obvious signs of sex trafficking); *Cf Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) (declining to consider a business venture theory because these allegations were incompatible with those in the operative complaint and because this theory was raised for the first time on appeal).

viii. G6 claims its teams regularly assess properties to ensure safety and security measures are in place.[6] G6 mandates human trafficking prevention training; this training teaches franchisee employees how to recognize and report human trafficking. *Id*. G6 regularly assesses its franchised locations, including the Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, to ensure its human trafficking training is completed. *Id*.

ix. G6 is subject to the jurisdiction of this Court because it regularly transacts business in California, is registered to do business in California, entered into and remains in franchise agreements with California entities and/or entities operating hotels in California, including its franchise agreement with Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX where JANE AB DOEwas trafficked, contracts to supply services in California, caused indivisible injuries to Plaintiff in California, and knowingly profited from an illegal sex trafficking venture at the Motel 6 Los Angeles, CA, located at Downtown, 906 S Alvarado St, Los Angeles, CA 90006 - Motel 6 Gardena, CA, located at,14605 Crenshaw Blvd, Gardena, CA 90249 - Motel 6 Austin, TX, located at, 8010 N Interstate Hwy 35, Austin, TX 78753 - Motel 6 Dallas, TX, located at, Northwest, 2380 W Northwest Hwy, Dallas, TX 75220.

34.    Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, are a California limited partnership with its principal places of business located as follow Motel 6 Los Angeles, CA, located at Downtown, 906 S Alvarado St, Los Angeles, CA 90006 - Motel 6 Gardena, CA, located at,14605 Crenshaw Blvd, Gardena, CA 90249 - Motel 6 Austin, TX, located at, 8010 N Interstate Hwy 35, Austin, TX 78753 - Motel 6 Dallas, TX, located at, Northwest, 2380 W Northwest Hwy, Dallas, TX 75220, they are a hospitality company and franchisee of Defendant G6 and does business as Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX. Directly and through its franchise agreement with Defendant G6, Defendant Motel 6, Inc. directly offered public lodging services

---

[6] https://g6hospitality.com/g6-hospitality-partners-with-ecpat-usa-to-combat-trafficking-and-exploitation/

at Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX.

i. Defendant Motel 6, Inc. is a franchisee of G6 and does business as Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX.

ii. Franchised Motel 6 motels are identified by G6's trademark, "Motel 6" and by certain other trade names, service marks, trademarks, logos, emblems, and indicia of origin (known as "proprietary marks").

iii. As a G6 franchisee Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX was required to comply with G6's anti-trafficking policies and procedures. These policies and procedures required employees of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX to report potential criminal activity and indices of human trafficking to G6's upper-level management.

iv. Every employee of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX underwent human trafficking prevention training which teaches employees how to recognize and report human trafficking.

v. As outlined below, employees of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX witnessed open and obvious signs of Plaintiff's trafficking, and yet continued, with G6, renting rooms to her trafficker.

vi. As a G6 franchisee, Defendant Motel 6, Inc. received confidential operating and brand standard manuals that contained both mandatory and recommended standards and procedures Defendant Motel 6, Inc. was required to use when operating the Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX.

vii. The franchise agreement Defendant Motel 6, Inc. entered into with G6 granted Defendant Motel 6, Inc. the right to use Motel 6 trademarks for the

operations of the Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX where Plaintiff was trafficked.

viii. Defendant Motel 6, Inc. was responsible for the day-to-day operations, under G6's supervision, at Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX where JANE AB DOE was trafficked, and was required, by G6 to undergo on-site and other opening training; provide G6 with a percentage of the gross room revenue from the money generated by the operations of Motel 6; provide G6 with a percentage of the rate charged for the rooms in which JANE AB DOE was trafficked; provide G6 with program fees from a percentage taken from gross room revenues generated by the operations of Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX, including a percentage of the rate charged for the rooms in which JANE AB DOE was trafficked; required to attend G6's annual conference; required to use the wireless internet access provided by G6; and was required to comply with the standards and policies in G6's operating manual.

ix. As outline fully below, Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX witnessed open and obvious signs of sex trafficking and would have reported suspected red flags to G6.

x. Through its franchise agreement with G6, Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX knowingly benefited or received something of value (here, a percentage of gross room revenue for the money generated through the operation of its franchised hotels, including the rates charged for the rooms in which Plaintiff was trafficked), from its facilitation of or participation in a venture[7] (here, venturing into the continuous business relationship in the hotel sphere through its franchise agreement in a context where G6 was the primary facilitator or participant in renting rooms; where G6 controlled booking and payment processing for the rental of rooms at its

[7] *See* n. 3, *supra*.

franchised hotels; because G6 fixed the price of room rentals; and because the franchisee directly interfaced with Plaintiff's trafficker and rented rooms to him in compliance with G6's procedures), which it knew or should have known to engage in sex trafficking through room rentals in which Plaintiff was trafficked. Defendant Motel 6, Inc.  is subject to the jurisdiction of this Court because it is a California limited partnership, regularly does business in California, entered into a franchise agreement with G6 in California, caused indivisible injuries to Plaintiff in California, contracts to supply services in California, and knowingly profited from an illegal sex trafficking venture at Motel 6 Los Angeles, CA, located at Downtown, 906 S Alvarado St, Los Angeles, CA 90006 - Motel 6 Gardena, CA, located at,14605 Crenshaw Blvd, Gardena, CA 90249 - Motel 6 Austin, TX, located at, 8010 N Interstate Hwy 35, Austin, TX 78753 - Motel 6 Dallas, TX, located at, Northwest, 2380 W Northwest Hwy, Dallas, TX 75220, they are a hospitality company and franchisee of Defendant G6 and does business as Motel 6 Los Angeles, CA, Motel 6 Gardena, CA, Motel 6 Austin, TX, and Motel 6 Dallas, TX.

35.    Whenever reference is made in this Complaint to any act, deed, or conduct of the Hotel Defendants, the allegation is that the Hotels Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of the Hotel Defendants and G6 Defendants.

36. Defendant Red Roof Inn INC is an Ohio corporation with its principal place of business in New Albany, Ohio, and is registered to do business in California.

37.    Defendant Red Roof Inn INC, LLC is a for-profit Ohio corporation with its principal place of business in New Albany, Ohio.

38. Defendant Days Inn by Wyndham is a New Jersey corporation with its principal place of business in Parsippany, New Jersey, and is registered to do business in California.

39.     Defendant Days Inn by Wyndham is a for-profit New Jersey corporation with its principal place of business in Parsippany, New Jersey and is part of Wyndham Hotels and Resorts.

40. Defendant Super 8 by Wyndham is a New Jersey corporation with its principal place of business in Parsippany, New Jersey, and is registered to do business in California.

41. Defendant Super 8 by Wyndham is a for-profit New Jersey corporation with its principal place of business in Parsippany, New Jersey and is part of Wyndham Hotels and Resorts.

42. Defendants Days Inn and Super 8, by Wyndham will collectively be referred to as Wyndham Hotel Defendants

### SEX TRAFFICKING UNDER FEDERAL LAW

46.     Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.

47.     The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. §1595(a).

48.     "Sex trafficking" is defined by the TVPRA under 22 U.S.C.§7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

49.     The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced the perform such act has not attained 18 years of age." 22 U.S.C. §7102(11).

### FACTUAL BACKGROUND

50.     JANE AB DOEbrings her claims against hotel franchisors, franchisees, owners, operators, and managers for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).

51.    The following list outlines the roles of each defendant at each property that is the subject of this complaint:

Motel 6 Los Angeles, CA - Downtown

    Franchisor: G6 Hospitality

    Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Motel 6 Gardena, CA

    Franchisor: G6 Hospitality

    Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Motel 6 Austin, TX

    Franchisor: G6 Hospitality

    Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Motel 6 Dallas, TX

    Franchisor: G6 Hospitality

    Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Studio 6 Dallas, TX

    Franchisor: G6 Hospitality

    Franchisee, Owner, Operator, Manager: Motel 6, Inc.

Red Roof Inn Houston East

    Franchisor:  Unknown

    Franchisee: Unknown

Days Inn by Wyndham

    Franchisor: Wyndham Hotel Group

    Franchisee, Owner, Operator, Manager: Wyndham Hotel Group.

Super 8 by Wyndham

    Franchisor: Wyndham Hotel Group

    Franchisee, Owner, Operator, Manager: Wyndham Hotel Group.

52.    Defendants who knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person with knowledge that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the

person to engage in a commercial sex act shall be held liable under the civil perpetrator liability section of 1595.

53.     Here, perpetrator liability applies to all Defendant franchisees, operators, and managers who were eyewitnesses and accomplices to the established modus operandi that caused JANE AB DOEbe forced to perform commercial sex acts on their properties.

54.     The TVPRA also prohibits Defendants from profiting from any venture they know or should know involves a violation of § 1591, and thereby establishes a non-delegable duty to exercise reasonable diligence and reasonable care.

55.     This beneficiary liability of § 1595 applies to all defendants who each (1) knowingly benefitted (2) "from participation in a venture" (3) that it "knew or should have known has engaged in" trafficking the Plaintiff. This includes all named Defendants, including the franchisor Defendants.

56.     To save costs and continually reap millions of dollars in profits, all Defendants failed to create, adopt, implement, and enforce adequate company-wide policies and procedures regarding suspected incidents of human trafficking and at their hotel properties.

57.     Furthermore, Defendants did not train staff sufficiently on how to identify and respond to suspected human trafficking and failed to conduct audits confirming compliance with policies and procedures.

58.     Defendants ignored reports and data on suspected incidents or occurrences of human trafficking on their properties and failed to analyze the rate at which those occurrences changed as a result of implementing human trafficking policies and procedures. Defendants did not establish mandatory and secure reporting mechanisms at the point of sale.

59.     With little to no risk posed to traffickers seeking to use Defendants' rooms as a safe location to force victims like JANE AB DOEto engage in commercial sex against her will, the sex trade continues to thrive at Defendants' properties while Defendants reap the benefits.

60.     JANE AB DOEwas raped nearly one thousand (1,000) times at Defendants' hotels. During that time, JANE AB DOEknew of countless other victims who were also raped at Defendants' hotels. Often, hotel employees would not only witness JANE AB DOEbeing trafficked, but they would actively help her trafficker perpetrate the crime, and on some

occasions, would even watch JANE AB DOEas she was being raped or participate in the rape themselves.

61.     Plaintiff's injuries are indivisible and cannot be separated. Plaintiff's injuries are the result of continued instances of ongoing violent, traumatizing sexual exploitation.

## THE SEX TRAFFICKING OF JANE AB DOE

62.     The facts alleged herein stem from human trafficking for commercial sex in California. While victimized by her trafficker, JANE AB DOEwas subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and imprisonment at the hotels owned, operated, managed, supervised, and/or branded by Defendants from approximately 2012 through 2014.

63.     JANE AB DOEmet her trafficker in Dallas, TX, she ran away from Child Protective Services, homeless, met a girl on the train, the girl said to JANE AB DOEgo with her and her boyfriend, she was approximately 13 years old. They picked up her at Plano Station.

64. During the first night, JANE AB DOEtrafficker took her to a house, in a kid's room, he raped her with a gun in his hands, he tells her that he "own" her, after the sexual abuse, JANE AB DOEtrafficker hit her, and she was unconscious. She wakes up the next morning and her trafficker gives her clothes and heels. Within 24 hours she was being trafficked.

65.     A.B.'s trafficker would threaten her and use physical force and abuse to force JANE AB DOEto comply.  Each day, he forced JANE AB DOEto be sold to enough buyers so that she satisfied his stated daily minimum which varied day to day. JANE AB DOEwas not allowed to leave the hotel rooms in which she was trafficked for any reason, including to feed herself. Her trafficker would beat, yell, and torment JANE AB DOEoften and loudly in the public common areas of the hotels in which she was trafficked.

### Motel 6 Los Angeles, CA, Downtown - Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX, branded by Defendant G6 and Owned, Operated, and Managed by Defendant Motel 6, Inc.

66.     During 2012 through 2014, A.B.'s trafficker would frequently rent rooms at Motel 6 Los Angeles, CA, Downtown - Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX. Motel 6, Inc. they were doing business as Motel 6, INC, operated the same,

and conducted the day-to-day business of the same. Motel 6 Los Angeles, CA, Downtown -
Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX was
operated under Defendant G6's brand, was supervised by G6, and bound to follow directives
and operating requirements as outlined by G6. These directives include mandatory human
trafficking training and procedures, which required Motel 6 employees to report criminal
activity and indices of human trafficking to G6. Motel 6 should have reported suspected indices
of human trafficking to G6's corporate executives and upper-level management pursuant to
G6's human trafficking training, policies, and procedures.

67.     Defendant Motel 6 and Defendant G6 were parties to a franchise agreement. Through
this franchise agreement, Defendant Motel 6 and G6 engaged in a venture; they took part in a
common undertaking involving risk and potential profit. More specifically, Motel 6 and G6
ventured into a continuous business relationship in the hotel industry. G6 was the primary
facilitator or participant in renting rooms; G6 controlled booking and payment processing for
the rental of rooms at its franchised hotels which was carried out by its franchisees; G6 fixed the
price of room rentals – rentals effectuated by its franchisee. Given G6's role as the primary
facilitator or participant in renting rooms (including the rooms rented to Plaintiff's trafficker),
and Motel 6's necessary participation in the room rentals by interfacing with customers,
including Plaintiff's trafficker, a continuous business relationship existed between the trafficker,
G6, and Motel 6.

68.     A.B.'s trafficker frequently rented rooms at Motel 6 Los Angeles, CA, Downtown -
Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX, because
the rooms at those hotels provided a convenient and anonymous location to which he could
invite buyers.

69.     A.B.'s trafficker intermittently rented rooms at Motel 6 Los Angeles, CA, Downtown -
Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX, for
weeks or months at a time throughout approximately 2012 through 2014.

70.     While held captive at Motel 6 Los Angeles, CA, Downtown - Motel 6 Gardena, CA -
Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX, JANE AB DOEencountered
hotel staff evidencing obvious signs of abuse, including but not limited to visible bruising,

malnourishment, being in a drugged state, and clothing inappropriate for the weather or general public.

71.     Even one time, JANE AB DOEinteracted with a maid, who went to her room, the maid asks JANE AB DOEif she needed anything, also tells her that she was warned by the front desk not to service that room.

72.     A.B.'s trafficker made specific room requests so as to find convenient entrances for buyers. Defendants would even instruct A.B., her trafficker and buyer(s) to use certain entrances / exits so as not to be seen.

73.     A.B.'s trafficker usually did drugs in the Motel's 6, he usually left behind paraphernalia drugs, even with that, he continued renting rooms there.

74.     In Motel 6 Gardena CA, if the key got deactivated, JANE AB DOEtrafficker told her that she could go to the front desk and ask for another key, no one would ask any questions because they already knew him. She was clearly underage.

75.     Motel 6 Los Angeles, CA, Downtown - Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX, also allowed certain people to rent the rooms and allowed A.B.'s trafficker to pay for extended stays even though it was not allowed as well as other benefits.

76.     Despite these repeated, open, and obvious signs of Plaintiff's trafficking, G6 and Motel 6, Inc. continued renting rooms to Plaintiff's trafficker.

**Days Inn by Wyndham, Super 8 by Wyndham, branded by Defendant Wyndham Richardson and Owned, Operated, and Managed by Defendant Wyndham Hotel Group.**

77.     During 2012 through 2014, A.B.'s trafficker would frequently rent rooms at Days Inn by Wyndham, Super 8 by Wyndham, they were doing business as Wyndham Hotel Group, operated the same, and conducted the day-to-day business of the same. Days Inn by Wyndham, Super 8 by Wyndham was operated under Defendant Wyndham Hotel Group brand, was supervised by Wyndham Hotel Group, and bound to follow directives and operating requirements as outlined by Wyndham Hotel Group. These directives include mandatory human trafficking training and procedures, which required Wyndham Hotel Group employees to report criminal activity and indices of human trafficking. Days Inn by Wyndham, Super 8 by

Wyndham, should have reported suspected indices of human trafficking to Wyndham Hotel Group corporate executives and upper-level management pursuant to Wyndham Hotel Group human trafficking training, policies, and procedures.

78.      Defendant Days Inn by Wyndham, Super 8 by Wyndham and Defendant Wyndham Hotel Group were parties to a franchise agreement. Through this franchise agreement, Defendant Days Inn by Wyndham, Super 8 by Wyndham and Defendant Wyndham Hotel Group engaged in a venture; they took part in a common undertaking involving risk and potential profit. More specifically, Days Inn by Wyndham, Super 8 by Wyndham and Defendant Wyndham Hotel Group ventured into a continuous business relationship in the hotel industry. Wyndham Hotel Group was the primary facilitator or participant in renting rooms; Wyndham Hotel Group controlled booking and payment processing for the rental of rooms at its franchised hotels which was carried out by its franchisees; Wyndham Hotel Group fixed the price of room rentals – rentals effectuated by its franchisee. Given Wyndham Hotel Group role as the primary facilitator or participant in renting rooms (including the rooms rented to Plaintiff's trafficker), and Days Inn by Wyndham, Super 8 by Wyndham necessary participation in the room rentals by interfacing with customers, including Plaintiff's trafficker, a continuous business relationship existed between the trafficker, Days Inn by Wyndham, Super 8 by Wyndham, and Defendant Wyndham Hotel Group.

79.      A.B.'s trafficker frequently rented rooms at Days Inn by Wyndham, Super 8 by Wyndham, because the rooms at those hotels provided a convenient and anonymous location to which he could invite buyers.

80.      A.B.'s trafficker intermittently Days Inn by Wyndham, Super 8 by Wyndham, for weeks or months at a time throughout approximately 2012 through 2014.

81.      While held captive at Days Inn by Wyndham, Super 8 by Wyndham, JANE AB DOEencountered hotel staff evidencing obvious signs of abuse, including but not limited to visible bruising, malnourishment, being in a drugged state, and clothing inappropriate for the weather or general public.

82.      Even one time, in Super 8 by Wyndham JANE AB DOEwas beaten indiscriminately by her trafficker, due to the rudeness of the physical abuse, as a result of her screams, a couple

staying at the hotel called the police, the police arrived and knocked door to door, when they arrived at the room where JANE AB DOEand her trafficker were staying, her trafficker forced her to pretend to be asleep. The next day, the people at the hotel called the couple who had called the police to the office, near where JANE AB DOEand A.B.'s trafficker were staying, and then threw them out of the hotel for bringing "police to the business". According to JANE AB DOEthis seemed planned, as if they wanted A.B.'s trafficker to see and know the actions the hotel was taking against the whistleblowers.

83.     A.B.'s trafficker made specific room requests so as to find convenient entrances for buyers. Defendants would even instruct A.B., her trafficker and buyer(s) to use certain entrances / exits so as not to be seen.

84.     Despite these repeated, open, and obvious signs of Plaintiff's trafficking, Days Inn by Wyndham, Super 8 by Wyndham, and Wyndham Hotel Group. continued renting rooms to Plaintiff's trafficker.

**EACH DEFENDANT HAS BEEN UNIQUELY AWARE OF TRAFFICKING AT HOTELS ACROSS THEIR BRANDS BECAUSE OF THEIR INTERNET POLICIES**

85.     Defendants each understand the importance that internet access can have to facilitate human trafficking.

86.     Defendants each signed on to ECPAT publicly committing to participate in the programs shown to assist in identifying and preventing human trafficking inside their branded hotels including following the ECPAT checklist.

87.     The ECPAT checklist specifically indicates that Wi-Fi passwords should be changed often and access to websites like Backpage and Craigslist Erotic services from their hotels should be monitored.

88.     Defendant G6 is the face and a signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking in their hotel properties.

89.     Defendant G6 publicly committed to educating their hotel properties on human trafficking and should have created brand standards for implementation, mandates, and operations.

90.     Defendants G6, Motel 6 and Wyndham Hotel Group, recognize the value of offering free internet service to their customers.

91.     Defendants G6, Motel 6 and Wyndham Hotel Group require each hotel property to offer free internet service.

92.     Defendants G6, Motel 6 and Wyndham Hotel Group require hotel properties to use brand approved internet providers, who are sufficiently knowledgeable, to provide cybersecurity and prevent illegal activity from occurring at their hotels.

93.     Defendants G6, Motel 6 and Wyndham Hotel Group, hotels are provided access to internet data which they know will help enhance customer service or otherwise permits the brand to exploit by other means.

94.     Internet access at their brand hotel properties is through two means:

        i. First, Defendants G6, Motel 6 and Wyndham Hotel Group provide internet
           access to guests through wireless internet accessible in their guest rooms and;

        ii. Second, provide internet access through publicly accessible wireless networks
            accessible in the lobby of other common areas of their brand hotels.

95.     Defendants collect data on internet usage through the wireless internet services that Defendants G6, Motel 6 and Wyndham Hotel Group provide. Such data includes:

        i. The IP address and other identifying information for all devices that access the
           internet through Defendants G6, Motel 6 and Wyndham Hotel Group wireless
           networks;

        ii. The identity of websites accessed by those devices through the IP addresses of
            the servers that host those websites; and

        iii. Information about the user accessing the internet through Defendants G6,
             Motel 6 and Wyndham Hotel Group wireless networks, including the users'
             room number, a user-provided name, and other identifying information.

96.     G6, Motel 6 and Wyndham Hotel Group internet access policies each purportedly prohibit the use of the internet access that they provide for unlawful purposes.

97.     In violation of their federal statutory obligations under the TVPRA, G6, Motel 6 and Wyndham Hotel Group failed to monitor internet use at hotels across their brands (including those owned and operated by Motel 6 as named herein) and the local hotels at issue in this case, in order to identify signs and perpetrators of commercial sex trafficking within their walls.

98.     G6, Motel 6 and Wyndham Hotel Group knew or should have known of the prevalent use of websites like Backpage.com, Craigslist.com, and other similar websites traffickers use to pose advertisements for sex within their properties.

99.     Despite that knowledge, G6, Motel 6 and Wyndham Hotel Group made no effort to flag or block the use of such websites by traffickers and instead exercised willful blindness to use of their wireless networks to further human trafficking in their hotels, including the hotels where Plaintiff was trafficked.

100.    G6, Motel 6 and Wyndham Hotel Group, blindness facilitated trafficking at their hotels by allowing traffickers to post unlawful advertisements through their own wireless networks in violation of their own policies on the use of said networks.

**A. DEFENDANTS WHO OWNED, OPERATED, AND MANAGED THE HOTEL PROPERTIES ARE LIABLE UNDER THE CIVIL PERPETRATOR LIABILITY SECTION OF 18 U.S.C. § 1595.**

101.    Defendants Motel 6, Inc. And Wyndham Hotel Group are liable under the civil perpetrator liability section of 18 U.S.C. 1595 because they knowingly harbored or maintained JANE AB DOEwith knowledge that fraud or force would be used to cause her to engage in a commercial sex act.

102.    Knowledge does not require certainty as to a future act but rather is a state of mind in which the knower is familiar with the pattern of conduct.

103.    Here, each Defendant knew, in the sense of being aware of an established modus operandi that would in the future cause JANE AB DOEto engage in a commercial sex act.

**i. Motel 6 is liable under the civil perpetrator liability section of 18 U.S.C. § 1595.**

---

104.   Motel 6 had actual knowledge that JANE AB DOE was being trafficked and knowingly recruited, enticed, harbored, patronized, and solicited JANE AB DOE at Motel 6 Los Angeles, CA, Downtown - Motel 6 Gardena, CA - Motel 6 Austin, TX - Motel 6 Dallas, TX - Studio 6 Dallas, TX with knowledge that means of force, threats of force, fraud, and coercion would be used to force JANE AB DOE to engage in commercial sex acts.

**B. DEFENDANTS ARE DIRECTLY LIABLE UNDER SECTION 1595 FOR THEIR INACTION AND FAILURES RESULTING IN COMMERCIAL SEX TRAFFICKING AT THE HOTELS BRANDED, OPERATED, AND/OR OWNED BY THEM**

105.   Defendants G6, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, and Motel 6 Dallas TX, have been on notice since as early as 2006, that sex trafficking occurs in the hotels they own, operate, supervise, and brand, and that the hotel industry is the hub of sex trafficking, yet all of them failed and persist in failing to fulfill their statutory responsibility resulting in commercial sex trafficking occurring in their branded, owned, supervised, and operated properties.

**i. Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX are Directly Liable**

106.   Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX are franchisees of Defendant G6.

107.   It is directly liable under the TVPRA because it had constructive knowledge of the extensive sex trafficking occurring at its hotel. Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX own employees observed, and directly assisted in, Plaintiff's sex trafficking.

**ii. Days Inn by Wyndham and Super 8 by Wyndham are Directly Liable**

108.   Days Inn and Super 8 are franchisees of Defendant Wyndham Hotel Group.

109.     It is directly liable under the TVPRA because it had constructive knowledge of the extensive sex trafficking occurring at its hotel. Days Inn and Super 8 own employees observed, and directly assisted in, Plaintiff's sex trafficking.

**C. DEFENDANTS G6, MOTEL 6 AND WYNDHAM HOTEL GROUP ARE VICARIOUSLY LIABLE FOR THE CONDUCT OF THE LOCAL OPERATING HOTELS WHO ARE EITHER THEIR FRANCHISE PARTNERS OR AGENTS DUE TO THEIR LEVEL OF CONTROL**

110.     In addition to and apart from Defendant G6, Motel 6's and Wyndham Hotel Group direct liability, Plaintiff alleges said Defendants are also vicariously liable for the conduct of the local hotels.

111.     Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or third-party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a contract or franchise agreement and still profits from putting heads in beds.

112.     The average consumer, including Plaintiff and her traffickers, do not see this relationship. The parent brand gives the property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand. The same brand is emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

113.     In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS), and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, and a website. Thus, booking and room reservations are controlled by the corporate parent brand. The corporate brand parents, and specifically here G6, Motel 6's and Wyndham Hotel Group, can see booking and reservation trends, including for those hotels where Plaintiff was trafficked.

114. The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement. Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX, and Days Inn and Super 8, did so here.

115.    Per the contract, franchise agreement, or direct ownership, supervision, and operation by the brand, the parent brand may enforce these standards through periodic inspections and even termination of the agreement if the local hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

**i. G6 is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX**

116.    Defendant G6 is in a franchise agreement with Defendants Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX.

117.    Defendant G6 has and exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

118.    G6 exercises actual control over its franchisees, including Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX, through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.

119.     As a hotel operator brand, G6 controls the training, procedures, and policies for its brand hotels, including Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX where JANE AB DOEwas trafficked.

120.    G6 requires franchisees, including Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX, to strictly conform with its brand standards, and considers guest safety and respect a component of its social impact.

121.    Through its franchise agreement with Motel 6 doing business as Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX,

G6 knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals JANE AB DOEwas victimized in.

122.     As part of its franchise agreement with Defendant Motel 6, G6 provided, inter alia, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX operated by Defendant Motel 6, Inc., including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX operated by Motel 6, Inc., including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; required Defendant Motel 6 and other franchisees to attend G6's annual conference; offered additional training to Defendant Motel 6 as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Motel 6, Inc., and required franchisees, including Defendant Motel 6, Inc. to comply with the standards and policies in G6's operating manual.

123.     G6 requires the hotels in its portfolio – including Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX to comply with G6 brand standards and all local, state, and federal laws.

124.     G6 claims its teams regularly assess properties to ensure safety and security measures are in place.

125.     G6 exercised control over Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX by:

> i. distributing information to assist employees in identifying human trafficking;
> ii. providing a process for escalating human trafficking concerns within the organization;
> iii. requiring employees to attend training related to human trafficking;

iv. providing new hire orientation on human rights and corporate responsibility;

v. providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

vi. developing and holding ongoing training sessions on human trafficking; and

vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

126.    The G6 branded hotel where JANE AB DOEwas trafficked was and is the actual and apparent agent of G6 and together they offer, or offered, public lodging services in the hotel. This agency relationship was created through Defendant G6's exercise of an ongoing and systematic right of control over its franchised hotels, beyond that which is necessary to maintain basic standards, by Defendant G6's operations, including the means and methods of how its hotels conducted business through the following actions:

i. hosting online bookings on Defendant G6's domain;

ii. requiring G6 hotels to use Defendant G6's customer rewards program;

iii. setting employee wages;

iv. making employment decisions;

v. advertising for employment;

vi. sharing profits;

vii. standardized training methods for employees;

viii. building and maintaining the facility in a manner specified by the owner;

ix. standardized or strict rules of operation;

x. regular inspection of the facility and operation by owner;

xi. fixing prices;

xii. developing uniform and consistent policies regarding the prevention of commercial sex trafficking at brand properties, including a risk management process to identify, prevent, and mitigate risks for commercial sex trafficking; and

xiii. other actions that deprive Motel 6 hotels of independence in business operations.

127.    An apparent agency also existed/exists between Defendant G6 and the Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, where Plaintiff was trafficked. Defendant G6 holds Studio 6 hotels to the public as possessing authority to act on its behalf.

128.    As alleged herein, the employees of the Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX, observed and were aware of Plaintiff's plight, yet the policies and procedures from Defendant G6 to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education, and/or enforcement by Defendant G6.

129.    As alleged herein and upon information and belief, the employees of the Studio 6 hotel were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant G6, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

130.    G6 was not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Studio 6 hotel where Plaintiff was trafficked.

131.    Given Defendant G6's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including the Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX, Defendant G6 breached its duties in the following ways:

i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**      Exhibit A – Page 31

iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

132.    G6 brands may kick delinquent hotels out of its system, including Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments. However, it is seldom done. Nevertheless, this consequence is what provides G6 the actual control over Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

133.    G6 accepted the profits from A.B.'s trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with A.B.'s trafficker.

134.    G6 knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

135.    If defendant G6 had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been made available to A.B.'s trafficker and no profits would have been gained.

136.    Acceptance of these profits was G6's affirmation of the Motel 6 Los Angeles, CA, Motel 6 Gardena CA, Motel 6 Austin TX, and Motel 6 Dallas TX, and Studio 6 Dallas TX total inaction with regard to A.B.'s trafficker and her victimization.

**ii. Wyndham hotel group is indirectly and vicariously liable under the TVPRA as a principal for the failures of its agent Days Inn and Super 8 by Wyndham**

137.    Defendant Wyndham hotel group is in a franchise agreement with Defendants Days Inn and Super 8.

138.    Defendant Wyndham hotel group has and exercised control over the local hotel with respect to many issues regarding the day-to-day operation of the property, but also specifically with regard to the local hotel's policy on human trafficking.

139.    Wyndham hotel group exercises actual control over its franchisees, including Days Inn and Super 8, through control over the brand standards which are reflected through the franchise agreements entered into with each franchisee subsidiary or operating hotel.

140.    As a hotel operator brand, Wyndham hotel group controls the training, procedures, and policies for its brand hotels, including Days Inn and Super 8, where JANE AB DOEwas trafficked.

141.    Wyndham hotel group requires franchisees, including Days Inn and Super 8, to strictly conform with its brand standards, and considers guest safety and respect a component of its social impact.

142.    Through its franchise agreement with Wyndham hotel group doing business as Days Inn and Super 8, Wyndham hotel group knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known to engage in sex trafficking through the room rentals JANE AB DOEwas victimized in.

143.    As part of its franchise agreement with Defendant Days Inn and Super 8, Wyndham hotel group provided, inter alia, on-site and other opening training and assistance; received and receives a percentage of the gross room revenue from the money generated by the operations of Days Inn and Super 8 operated by Defendant Wyndham hotel group, including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; received and receives program fees through a percentage fee taken from gross room revenues generated by the operations of Days Inn and Super 8, operated by Wyndham hotel group, including a percentage of the rate charged for the rooms in which JANE AB DOEwas trafficked; required Defendant Wyndham hotel group and other franchisees to attend Wyndham hotel group annual conference;

offered additional training to Defendant Days Inn and Super 8 as a franchisee including but not limited to general management training; received and collected payment invoice and processing fees; offered wireless internet access to franchisees, including Defendant Wyndham hotel group, and required franchisees, including Defendant Days Inn and Super 8 to comply with the standards and policies in Wyndham hotel group operating manual.

144.    Wyndham hotel group requires the hotels in its portfolio – including Days Inn and Super 8 to comply with Wyndham hotel group brand standards and all local, state, and federal laws.

145.    Wyndham hotel group claims its teams regularly assess properties to ensure safety and security measures are in place.

146.    Wyndham hotel group exercised control over Days Inn and Super 8 by:

i. distributing information to assist employees in identifying human trafficking;

ii. providing a process for escalating human trafficking concerns within the organization;

iii. requiring employees to attend training related to human trafficking;

iv. providing new hire orientation on human rights and corporate responsibility;

v. providing training and education to the local hotel through webinars, seminars, conferences, and online portals;

vi. developing and holding ongoing training sessions on human trafficking; and

vii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

147.    The Wyndham hotel group branded hotel where JANE AB DOEwas trafficked was and is the actual and apparent agent of Wyndham hotel group and together they offer, or offered, public lodging services in the hotel. This agency relationship was created through Defendant Wyndham hotel group exercise of an ongoing and systematic right of control over its franchised hotels, beyond that which is necessary to maintain basic standards, by Defendant Wyndham hotel group operations, including the means and methods of how its hotels conducted business through the following actions:

i. hosting online bookings on Defendant Wyndham hotel group domain;

ii. requiring Wyndham hotels to use Defendant Wyndham hotel group customer rewards program;

iii. setting employee wages;

iv. making employment decisions;

v. advertising for employment;

vi. sharing profits;

vii. standardized training methods for employees;

viii. building and maintaining the facility in a manner specified by the owner;

ix. standardized or strict rules of operation;

x. regular inspection of the facility and operation by owner;

xi. fixing prices;

xii. developing uniform and consistent policies regarding the prevention of commercial sex trafficking at brand properties, including a risk management process to identify, prevent, and mitigate risks for commercial sex trafficking; and

xiii. other actions that deprive Wyndham hotels of independence in business operations.

148.    As alleged herein, the employees of the Days Inn and Super 8, observed and were aware of Plaintiff's plight, yet the policies and procedures from Defendant Wyndham hotel group to address this victimization were either inadequate to prevent her trafficking or were not properly implemented due to lack of training, education, and/or enforcement by Defendant Wyndham hotel group.

149.    As alleged herein and upon information and belief, the employees of the Days Inn and Super 8 hotels were aware of Plaintiff's trafficking and pursuant to corporate-wide policies reported such activity directly to defendant Wyndham hotel group, including illegal website use, booking and reservation history, payment by cash for several rooms at a time and visits from multiple men throughout the day.

150.     Wyndham hotel group was not only aware of Plaintiff's plight but also the failures of its own policies and procedures to protect her and prevent trafficking at the Days Inn and Super 8 hotels where Plaintiff was trafficked.

151.     Given Defendant Wyndham hotel group public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Days Inn and Super 8 hotels, Defendant Wyndham breached its duties in the following ways:

> i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

> ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

> iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

> iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

> v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

> vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; and

> vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

152.     Wyndham hotel group brands may kick delinquent hotels out of its system, including Days Inn and Super 8 where Plaintiff was trafficked, since it is at the expense of terminating their royalty payments. However, it is seldom done. Nevertheless, this consequence is what provides Wyndham the actual control over Days Inn and Super 8, including control over how it confronts and deals with known traffickers and trafficking victims such as Plaintiff.

153.     Wyndham hotel group accepted the profits from A.B.'s trafficker even though the signs of her trafficking were open and obvious, and receipt of those profits was, based on information

and belief, in direct violation of their own policies and procedures regarding the frequent repeat business they had with A.B.'s trafficker.

154.    Wyndham hotel group knew or should have known that such profits were derived from sex trafficker's illegal and tortious activities.

155.    If defendant Wyndham hotel group had ensured that the local hotel was following their policies on identifying victims of trafficking and undertaking actions to prevent the rental of rooms to known traffickers, rooms would not have been made available to A.B.'s trafficker and no profits would have been gained.

156.    Acceptance of these profits was Wyndham hotel group affirmation of the Days Inn and Super 8, total inaction with regard to A.B.'s trafficker and her victimization.

**DEFENDANTS' LIABILITY UNDER THE TVPRA**

**A. Defendants Knowingly Benefited Financially from The Sex Trafficking At The Local Hotels**

157.    Aside from their unique position in this growing epidemic, Defendants have the highest obligation and statutory duty to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry, and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so.

158.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, profited from the sex trafficking of JANE AB DOEand knowingly or negligently aided and engaged with her trafficker in the venture.

159.    G6 (through its franchisee Motel 6, Inc.), rented rooms to A.B.'s traffickers knowing, or should have known, that they were using the room to harbor sex trafficking victims, physically

assault them, and subject them to repeated exploitation as they were forced into sexual servitude.

160.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, knew, or should have known, that sex trafficking victims were being trafficked at Defendants' brand hotels – including Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, - and that they (G6, and Wyndham hotel group) were knowingly benefiting financially from said exploitation, because A.B.'s traffickers frequented the Defendants' hotels and paid for the room rentals.

161.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, profited from the sex trafficking of JANE AB DOEand knowingly or negligently aided and participated with A.B.'s traffickers in their venture. These Defendants took no action as JANE AB DOErepeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and often displaying prominent bruising all over her person while in the constant presence of her trafficker.

162.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, deliberately disregarded the implementation of best-known anti-trafficking policies, practices, and procedures to maintain profit.

163.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, knew that their expenses would increase if they hired more security personnel and funded more training programs. Additionally, G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX would lose revenue by preventing human traffickers from renting rooms. The combination of increased expenses and lost revenue meant less profit. In fact, profits were the driving force of their hollow "No Room for Trafficking" campaigns, as they improved Defendants image without any real impact on operations.

164.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, all financially benefited from the sex trafficking of JANE AB DOEand other victims like her and developed and maintained business models that attract and foster the commercial sex market for traffickers (including buyers.)

165.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, enjoy the steady stream of income that sex traffickers bring to their hotels.

166.    G6, and Motel 6, Inc and Wyndham hotel group financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

167.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, maintained their deficiencies to maximize profits by:

> i. Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

> ii. Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers; and/or

> iii. Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

**B. Defendants G6, and Motel 6, Inc. participated in a venture at and through the local hotels**

168.    There was a continuous business relationship through the rental of rooms between Plaintiff's traffickers, Defendants G6, Motel 6, Inc. and the local hotels they franchised, operated, and/or owned including the Motel 6 Los Angeles CA, Motel 6 Gardena CA, , Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX.

169.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, actively participated in this illegal endeavor by knowingly or negligently providing lodging to A.B.'s traffickers in which to harbor JANE AB DOEwhile they were trafficking her.

170.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from JANE AB DOEin which to harbor JANE AB DOEwhile she was being trafficked.

171.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, all had the opportunity to stop A.B.'s traffickers and offenders like him from victimizing JANE AB DOEand others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

172.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

173.    G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their hotels.

174.    Even though G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, were aware of the best policies, practices, and procedures necessary to fight human trafficking and despite their part in formulating, assessing, and promoting the best policies, practices, and procedures together, they failed to implement them by, among other acts, omissions, and commissions described in this Complaint:

       i. Reducing the costs of training employees and managers on how to spot the signs of human trafficking;

       ii. Failing to refuse room rentals or report guests to law enforcement, and

iii. Lowering a number of security costs and measures that could have combatted sexual trafficking and exploitation.

175.    To date, G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, have failed to train all of their employees and/or agents to look for signs of trafficking.

176.    The failure to implement the best policies, practices, and procedures was not an oversight by G6, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX.

**C. Defendants Knew Or Should Have Known Ventures Were Operating Out Of Their Hotels**

177.     Due to G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX failures to enact anti-trafficking policies and procedures to comply with the TVPRA, these Defendants, in essence, turned a blind eye to human trafficking. Therefore, these Defendants' failure to investigate and monitor human trafficking is sufficient to establish Defendants knew or should have known of human trafficking for commercial sex occurring at their brand properties, including the locations where Plaintiff was trafficked.

178.    G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas TX, knew, or should have known, that sex trafficking victims were being trafficked because they constantly entertained foot traffic at the rented room to appease the traffickers' daily quotas, the traffickers would help check her in then not proceed to the room, and the victim often displayed visible injury while seemingly never allowed to be alone. These behaviors indicated that sex traffickers were using the Defendants' hotels for a venture.

179.    As a direct and proximate result of these egregious practices on the part of G6 Hospitality LLC, Red Roof Inn, Days Inn by Wyndham, Motel 6 Los Angeles CA, Motel 6 Gardena CA, Super 8 by Wyndham, Studio 6 Dallas TX, Motel 6 Austin TX, Motel 6 Dallas

TX, JANE AB DOEand victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### COUNT ONE – 18 U. S. C. § 1595 ("TVPRA")

### (Against All Defendants)

180.   Plaintiff incorporates each foregoing allegation as if fully stated herein.

181.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

182.   Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit from a venture which they knew, or should have known, to engage in violations of 18 U.S.C. § 1591(a). At all relevant times, Defendants breached this duty by facilitating human trafficking through their participation in the harboring of Plaintiff, her trafficker, and buyers in their hotels for the purposes of commercial sex induced by force, fraud, or coercion.

183.   Defendants benefited as a result of their acts, omissions, and/or commissions by keeping operating costs low, maintaining the loyalty of traffickers and other individuals fueling the supply and demand of sex trafficking, and limiting mandatory regulations within their businesses. Moreover, Defendants knowingly benefited from Plaintiff's trafficking on each occasion they received payment or royalty fees for renting rooms at Defendants' hotels where Plaintiff, her trafficker, and numerous buyers were harbored. Defendants had actual or constructive knowledge of Plaintiff's trafficking but failed to implement or enforce anti-trafficking measures that would have helped her, and others like her. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of Plaintiff's injuries and damages.

184.   Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels in violation of 18 U.S.C. § 1591(a).

## CAUSES OF ACTION

### COUNT TWO – 18 U. S. C. § 1595 ("TVPRA")

**(Against All Defendants)**

180.     Plaintiff incorporates each foregoing allegation as if fully stated herein

185.  Defendants' actions and omissions violate California Civil Code § 52.5, which grants a private right of action to victims of human trafficking.

186. Defendants are civilly liable under California Civil Code § 52.5(a) because they:

a. Participated in, facilitated, or enabled human trafficking by failing to take reasonable measures to prevent it, despite obvious red flags.

b. Knowingly benefited, financially or otherwise, from human trafficking, profiting from hotel room rentals used for A.B.'s commercial sexual exploitation.

c. Failed to take reasonable steps to prevent trafficking activity on their premises, despite having the capacity and resources to do so.

187. As a direct and proximate result of Defendants' actions and omissions, Plaintiff has suffered and continues to suffer severe physical, emotional, and psychological harm, including but not limited to:

- ○   Physical injuries and medical expenses.

- ○   Severe emotional distress, anxiety, and PTSD.

- ○   Loss of dignity, trust, and personal autonomy.

- ○   Economic losses, including loss of income and future earning potential.

14. Pursuant to California Civil Code § 52.5 (b), Plaintiff seeks the following relief:

a   Compensatory damages for the harm suffered.

b   Punitive damages due to the willful and malicious conduct of Defendants.

c   Treble damages as permitted under the statute.

 d. Injunctive relief to prevent future trafficking at Defendants' hotels.

e. Reasonable attorneys' fees and litigation costs pursuant to California Civil Code § 52.5(d).

### PRAYER OF RELIEF

WHEREFORE Plaintiff requests the jury selected to hear this case render a verdict in her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it awards damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the costs associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential and/or special damages.

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. Disgorgement of profits obtained through unjust enrichment;

h. Restitution;

i. Punitive damages with respect to each cause of action;

j. Reasonable and recoverable attorneys' fees;

k. Costs of this action; and

l. Pre-judgment and all other interest recoverable.

On the basis of the foregoing, Plaintiff also requests a jury be selected to hear this case and render a verdict for Plaintiff, and against Defendants, and that it awards damages to Plaintiff in an amount which adequately reflects the enormity of Defendants' wrongs, and which will effectively prevent other similarly caused acts. Further, Plaintiff requests that the Court enter

judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deem appropriate under the circumstances.

Dated: February 4, 2025                              **DAGHER LAW**


By: _____
                Nicholas Dagher Esq.
                Attorneys for Plaintiff


## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.


Dated: February 4, 2025                              **DAGHER LAW**


By: _____
                Nicholas Dagher Esq.
                Attorneys for Plaintiff